## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THOMAS WIRTZ,

                          Plaintiff,

v.                                                      Case No. 01-2436-KGS

KANSAS FARM BUREAU
SERVICES, INC.,

                          Defendant.

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

This matter comes before the court upon plaintiff's Motion for Attorney's Fees and Costs

(Doc. 161).  Defendant filed its Response (Doc. 165) and plaintiff filed his Reply (Doc. 172).  After

properly petitioning the Court and obtaining leave to do so, defendant filed a Surreply (Doc. 175).[1]

After properly petitioning the Court and obtaining leave to do so, plaintiff filed a Response to

defendant's Surreply (Doc. 182). This matter is now ready for disposition.  For the reasons stated

below, the Court grants in part and denies in part the plaintiff's motion.

### INTRODUCTION

On August 29, 2001, the plaintiff filed his complaint under Title VII of the Civil Rights Act

of 1964 ("Title VII")[2] against the defendant, alleging gender employment discrimination, sexual

harassment/hostile work environment, and retaliation.  The case was tried before a jury commencing on

_____

[1] As noted in the court's Order dated October 4, 2004 (Doc. 180), the only portion of defendant's Surreply the court will consider is the discussion of the witness fee requested for the testimony of Ms. Connie Unrein.

[2] 42 U.S.C. § 2000e *et. seq.*

June 16, 2003.  On June 23, 2003, the jury returned a verdict in favor of plaintiff on the claim of gender

discrimination and in favor of defendant on the claims of sexual harassment and retaliation.  The jury

awarded the plaintiff $1,000 for emotional pain and suffering, $12,000 in pecuniary damages, and

$20,000 in punitive damages.  The jury, sitting in an advisory capacity only, declined to award plaintiff

any damages for lost wages or lost benefits.  On July 23, 2003, the court awarded the plaintiff back

pay in the amount of $8,063, with prejudgment interest thereon in the amount of $1,363 (Doc. 125).

On March 31, 2004, the court reduced plaintiff's pecuniary damages to $800 and vacated the $20,000

punitive damage award  (Doc. 143).  The court denied defendant's motion for a new trial (Doc. 143).

In the Amended Judgment filed on April 1, 2004, plaintiff's award totaled $11,226 (Doc. 144).

Plaintiff now seeks attorney's fees in the amount of $167,050, legal assistant fees in the amount

of $5,250, and costs of $7,419.47, for a total of $179,719.47.  Defendant opposes the fee request as

unreasonable and challenges plaintiff's costs on numerous grounds.

## DISCUSSION

### A.      Attorney's Fees

#### 1.      Legal Standards

"Attorney's fees awards in civil rights cases are designed 'to encourage the bringing of

meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives

surrounding the hiring of competent counsel.'"[3]  A prevailing party in a civil rights action is entitled to

recover fees pursuant to 42 U.S.C. §1988(b), which states that "the court, in its discretion, may allow

---

[3] *Baker v. Morrell & Co.*, 263 F. Supp. 2d 1161, 1192 (N.D. Iowa 2003), quoting *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986).

the prevailing party, ... a reasonable attorney's fee as part of the costs."  A prevailing party in a Title

VII action is awarded the same opportunity.  "In any action or proceeding under this subchapter the

court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee...."[4]  "The

standards governing awards of fees and costs under Title VII are identical to those employed in other

civil rights claims specifically controlled by 42 U.S.C. § 1988."[5]

> Reasonable attorney's fees are calculated by the trial court in the following manner:
>
> To determine a reasonable [attorney's] fee, the district court must arrive at a 'lodestar'
> figure by multiplying the hours [plaintiff's] counsel reasonably spent on the litigation by a
> reasonable hourly rate.  The fee applicant bears the burden of establishing entitlement to
> an award and documenting the appropriate hours expended and hourly rates.[6]

If a party is seeking compensation for services provided by non-lawyers, such as legal

assistants and paralegals, "the court may award them separately as part of the fee for legal services.

The court should scrutinize the reported hours and the suggested rates in the same manner it scrutinizes

lawyer time and rates."[7]  As is the case with the attorney's fees, reasonable fees for legal assistants and

paralegals are calculated by multiplying reasonable hours by a reasonable rate to arrive at the

appropriate lodestar figure.

 In addition to fees and expenses allowed under § 1988, a prevailing party in a civil rights action

---

[4] 42 U.S.C. § 2000e-5(k).

[5] *Godinet v. Management and Training Corp.*, 182 F. Supp. 2d 1108, 1110 (D. Kan. 2002),
citing 42 U.S.C. § 1988 and *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1111 (10th Cir. 1998).

[6] *Id.* (internal quotations omitted).

[7] *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998) (internal
quotations omitted).

is entitled to costs under 28 U.S.C. § 1920.[8]  A plaintiff who succeeds on any significant issue in

litigation that achieves some of the benefit the parties sought in bringing the suit is a prevailing party.[9]  In

this case, the parties do not dispute that the plaintiff is a "prevailing party."

### 2.      Reasonable Hours

The first step in calculating the lodestar is to determine the number of hours counsel reasonably

spent in representing the prevailing party.  "Counsel for the party claiming the fees has the burden of

proving hours to the district court by submitting meticulous, contemporaneous time records that reveal

... all hours for which compensation is requested and how those hours were allotted to specific tasks."[10]

> Once the district court has adequate time records before it, it must then ensure that the
> winning attorneys have exercised "billing judgment."  Billing judgment consists of
> winnowing the hours actually expended down to the hours reasonably expended.
> Hours that an attorney would not properly bill to his or her client cannot reasonably be
> billed to the adverse party, making certain time presumptively unreasonable.[11]

If the court has concluded that each specific task is properly chargeable to the client and,

therefore, properly presented in a fee application, the court "should look at the hours expended on each

task to determine whether they are reasonable."[12]

In determining what is a reasonable time in which to perform a given task or to

---

[8] *Case*, 157 F.3d at 1249.

[9] *Id.* (internal quotations omitted).

[10] *Id.*, citing *Ramos v. Lamm*, 713 F. 2d 546, 553 (10th Cir. 1983).

[11] *Id*, at 1250 (internal citations omitted).

[12] *Case*, 157 F.3d at 1250.

prosecute the litigation as a whole, the court should consider that what is reasonable in a particular case can depend upon facts such as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side. Another factor the court should examine in determining the reasonableness of hours expended is the potential duplication of services....  The court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required.[13]

Because calculating what hours are reasonable in a particular litigation can be a herculean task, "there is no requirement ... that district courts identify and justify each disallowed hour.  Nor is [there] any requirement that district courts announce what hours are permitted for each legal task."[14]  Instead, the court may arrive at a reasonable number of hours through a "general reduction of hours claimed."[15]

Plaintiff seeks compensation for 668.2 hours[16] expended by his only attorney, Mr. Alegria, on representing him throughout this case and for 70 hours expended by Mr. Alegria's legal assistant. Plaintiff contends that the actual number of hours devoted to this case was 1,024.3, but that this figure was reduced in the exercise of the counsel's billing judgment. Plaintiff's counsel supports his request with a copy of his time records.

Defendant objects to plaintiff's request as unreasonable.  In particular, defendant claims that the plaintiff's attempt to charge for certain tasks is improper as they are not "properly chargeable," and that the court should effect a blanket reduction of all of plaintiff's quarter-hour entries to one-tenth of an

---

[13] *Case*, 157 F.3d at 1250 (internal citations omitted).

[14] *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986) (internal citations omitted).

[15] *Mares*, 801 F.2d at 1203.

[16] This figure includes 19.3 hours spent preparing and drafting the Reply brief in the current attorney's fee dispute.

hour.

To aid in evaluating the reasonableness of plaintiff's hours, the court ordered and the defendant produced a summary of the hours expended by the defense counsel and legal assistants on this case.[17] In her declaration, defendant's lead counsel, Terry Mann, set forth that the total number of hours expended by defendant's lawyers was 1,013.8 and the total number of hours expended by legal assistants was 333.2. The court notes that it did not ask and the defense did not provide a detailed breakdown of these hours. The court finds particularly instructive that, despite the fact that the burden of proof rested on him throughout the case, plaintiff is seeking compensation for a significantly lower number of hours than the number actually expended by either side.

As indicated above, the court has the responsibility to ensure that hours an attorney would not properly bill to his client are not passed on to an unsuccessful adversary in a fee application. Defendant contends that plaintiff's time should be reduced to eliminate excessive and duplicative time devoted to certain tasks. For example, defendant objects to the June 23, 2003, billing entries which reflect 29.2 hours billed by plaintiff's counsel and 18 hours billed by his assistant. As the plaintiff pointed out in his Reply, inadvertent duplication of time entries resulted in counsel's billing more than 24 hours in a 24-hour period. The court is satisfied with the plaintiff's explanation and has already subtracted the duplicate hours from the total fee request, making further adjustments unnecessary.

In the same section, defendant objects to 16 hours devoted to attorney's fee motion, 6 hours reviewing the billing statement, 22 hours preparing for various depositions, 8 hours preparing and

---

[17] Declaration of Terry Mann, (Doc.184).

reviewing the pretrial order, four-tenths of an hour reviewing transmittal records from a court reporter, and time spent generally preparing and obtaining extensions of various court deadlines. As the court understands it, defendant's objections here go not to the propriety of the tasks charged, as all the tasks outlined above are customarily billed to clients, but to the amount of time plaintiff devoted to them.

The court finds defendant's objection to the amount of time plaintiff's counsel has assigned to preparing the instant motion for attorney's fees to be meritorious. As defendant points out, plaintiff's motion, together with the supporting memorandum, is only 13 pages long and is "identical to the motion [plaintiff's counsel] filed on December 22, 2003 in *Leidel v. Ameripride Services, Inc.*, Case No. 00-4148-JAR, Docket No. [94 and 96], down to the misplaced underlining." Defendant argues that 16 hours should not be charged for the preparation of the instant motion and memorandum in support thereof. The court agrees. The time plaintiff shall be allowed to recover for the preparation of the fee application is hereby reduced by 10 hours to 6 hours.

Defendant also opposes compensating plaintiff's counsel for tasks defendant claims are normally accomplished by staff. The main contention centers on the hours Mr. Alegria devoted to reviewing and summarizing various depositions. Defendant claims that "[d]eposition summaries are the sort of task typically performed by a legal assistant, and defendant should not be charged lawyer rates for such tasks."[18] In his Reply, plaintiff takes issue with defendant's assertion that he should have let his legal assistant summarize the depositions. Plaintiff's counsel appears to claim that much of his success in this case can be attributed to his mastery of the deposition transcripts that was acquired through

---

[18] Defendant's Response, p. 21 (DOC. 165).

meticulous summaries, and that requiring him to leave this task to a legal assistant would have undermined his efforts on behalf of his client.  From the disparity in the hours expended by plaintiff's and defendant's legal assistants, it is clear to the court that defense counsel utilized their legal assistants more extensively.  However, the court cannot agree that plaintiff's counsel's time devoted to deposition summaries should not be compensated.  Who summarizes depositions appears to be a matter of legal strategy, which the court will not second-guess at this stage.  Clearly, plaintiff's position has merit as he did prevail on arguably the most difficult claim – that of reverse gender discrimination.  Therefore, the court will not deny the plaintiff compensation for the hours spent by his counsel summarizing deposition transcripts even if, in some circumstances, such tasks are accomplished by legal assistants or attorneys with less experience.

Defendant next contends that all of plaintiff's counsel's travel time should be compensated at "no more than fifty percent of the hourly rate determined by the Court to be appropriate."[19]  This request stems from defendant's belief that, because travel time is inherently unproductive, it should not be billed at the full attorney hourly rate.  Plaintiff's counsel objects, claiming that, while driving, he was actively contemplating the case and either preparing for or evaluating the outcome of his trips.  In *Aquilino v. Univ. of Kansas*, this court held that "travel time should not be compensated at the full hourly rate because such time is inherently unproductive.  Although some attorneys customarily charge for such time at their full hourly rate, the Court believes that the more reasonable approach is to allow

---

[19] Defendant's Response, p. 22 (DOC. 165).

counsel to recover 50 per cent of travel time."[20]   The court agrees with defendant and finds that travel time is not equivalent to time exclusively devoted to the case while in one's office.  On the road, the driver is necessarily distracted, unable to make notes, read or access files.  As such, the time is, at the least, not as productive as it would be if the person were seated behind his or her desk.  Therefore, the court finds defendant's request to be reasonable and orders compensation for all of plaintiff's counsel's travel time to be at 50 percent of the reasonable hourly rate.[21]

Defendant requests that all of plaintiff's quarter-hour charges be reduced to one-tenth of an hour.  Defendant contends that many simple and routine tasks, including preparing unopposed motions, drafting emails to clients and making telephone calls, should not have taken an "experienced litigator" fifteen minutes' time.  Plaintiff responds by pointing out that his billing statement is replete with one-tenth of an hour entries and that defendant oversimplifies many of the tasks for which he requested fifteen minutes-worth of compensation.  The court has carefully reviewed plaintiff's billing statement and finds that, contrary to defendant's assertions, plaintiff has not over-utilized quarter-hour increments.  Many of the simplest tasks are, indeed, billed at one-tenth of an hour and the court will not order a wholesale reduction of all quarter-hour entries as such action would only serve to under-compensate the plaintiff for tasks that have, legitimately, taken his counsel fifteen minutes to complete.  Based upon the circumstances of this case, defendant's objection to the quarter-hour entries is denied.

Finally, defendant objects to any compensation for work plaintiff's counsel has done for the

---

[20] 109 F. Supp. 2d 1319, 1326 (D. Kan. 2000), citing *Smith v. Freeman*, 921 F.2d 1120, 1121-22 (10th Cir. 1990) (Affirming award of 25% of standard hourly rate for travel time.).

[21]  This order affects entries for travel by Plaintiff's counsel on 9/12/02, 9/13/02, 10/7/02 and 10/8/02.  Total travel time billed on those dates is 12 hours, which will be compensated at $90 per hour.

pending appeal.  The court agrees that until the plaintiff prevails on appeal, any request for time

expended pursuing such appeal is premature.  Accordingly, 8 hours have already been subtracted by

the court from the total hours sought by the plaintiff.

### 3.       Reasonable Hourly Rate

To calculate the lodestar amount, the court must next determine what rate plaintiff's attorney

may charge for his services.  In his motion for attorney's fees, Mr. Alegria requested to be

compensated at the rate of $250 per hour and to have his legal assistant compensated at the rate of $75

per hour.  Defendant challenges the hourly rate requested by Mr. Alegria, but does not challenge the

rate sought for Mr. Alegria's assistant.

"The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial

judge who is familiar with the case and the prevailing rates in the area."[22]  In examining the hourly rate

requested, the court's point of reference should be "the prevailing market rates in the relevant

community."[23]  The relevant community is the place where the litigation took place.[24]  "The first step in

setting a rate of compensation for the hours reasonably expended is to determine what lawyers of

comparable skill and experience practicing in the area in which litigation occurs would charge for their

time."[25]  "[T]he district court must award rates compatible with competent, trustworthy evidence of the

---

[22] *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987).

[23] *Blum v. Stevenson*, 465 U.S. 886, 895 (1984).

[24] *Jayhawk Invs., L.P. v. Jet USA Airlines, Inc.*, 1999 U.S. Dist LEXIS 16413 at *9, (D. Kan. 1999).

[25] *Case*, 157 F.3d at 1256.

market."[26]  Where "a district court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, use other relevant factors, including its own knowledge to establish the rate."[27]  For example, the court "can take judicial notice of the prevailing rate of fees" in the relevant community.[28]

In accordance with the standards set forth above, the court must look at the rates charged by lawyers of skills and experience comparable to those of Mr. Alegria practicing in Topeka, Kansas. The burden is on the plaintiff "to produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[29]

In support of his contention that $250 per hour is the rate commonly charged by attorneys in Topeka, Kansas with skills and experience comparable to his own, Mr. Alegria has submitted 4 affidavits. The affiants set forth that an hourly rate of $200 to $300 is an appropriate rate for Mr. Alegria.  Defendant did not submit any affidavits but relied instead on a recent District of Kansas opinion that awarded attorney's fees to Mr. Alegria at the rate of $150 per hour in an employment

---

[26] *Case*, 157 F.3d at 1256 ("As long as [the district court's] decision is grounded in appropriate market evidence, its ruling [on the matter of reasonable attorney rates] merits abuse-of-discretion deference from this court.").

[27] *Schmidt et. al. v. Shawnee County Treasurer*, 171 F. Supp. 2d 1178, 1182 (D. Kan. 2001), citing *Case*, 157 F.3d at 1257, and *Lucero*, 815 F.2d at 1385.

[28] *Schmidt*, 171 F. Supp. 2d at 1182 (District court took judicial notice of the rates prevalent in the Topeka area because it did not have before it adequate evidence of prevailing market rates.).

[29] *Blum*, 465 U.S. at 896.

discrimination case.[30]  In his Reply, plaintiff argues that "defendant's failure to present evidence of the current market rate in Topeka, Kansas is fatal to its request to the Court to reduce plaintiff's counsel's hourly rate of $250.00."[31]  Plaintiff relies on the 1998 Tenth Circuit decision in *Case v. Unified School Dist. No. 233* to further suggest that, in setting the hourly rate, the court is permitted to turn to its own knowledge of the market <u>only</u> where the parties have failed to present market evidence of applicable rates in the community in question.

The Tenth Circuit in *Case* indeed held that "a district court abuses its discretion when it ignores the parties' market evidence and sets an attorney's hourly rate using the rates it 'consistently grants.'"[32]  An example of the "market evidence" acceptable to the court in *Case* is "sworn affidavits from both parties that the market commands rates at a certain level."[33]  Deference to market evidence is appropriate because the court's primary motivation behind settling fee disputes should be to approximate, to the best of its ability, the result that the market would produce without judicial intervention.[34]  "[I]n order to comply with precedent, the district court must award rates compatible

---

[30] Defendant's Response, citing *Leidel v. Ameripride Services, Inc.*, 322 F. Supp. 2d 1206 (D. Kan. 2004).  Defendant also references other District of Kansas opinions to support its position that the rate requested by the plaintiff is out of step with the rates awarded to the prevailing party.

[31] Plaintiff's Reply, p. 4 (Doc. 172).

[32] 157 F. 3d at 1255.

[33] *Id.* at 1256.

[34] The *Case* court, in finding that the "invisible hand of the market sets rates," relies on the Seventh Circuit decision that held that "'it is the function of judges in fee litigation … to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order…. The object in awarding a reasonable attorney's fee … is to simulate the market where a direct market determination is infeasible.'" 157 F.3d at 1256, quoting *Steinlauf v. Continental Ill. Corp. (In re*

with competent, trustworthy evidence of the market.  As long as its decision is grounded in appropriate market evidence, its ruling merits abuse-of-discretion deference from this court."[35]

The only market evidence presented initially to this court in the instant matter was the four affidavits submitted by the plaintiff.  Because the court finds the affidavits to be trustworthy, it must consider them of greater value than the citations to caselaw provided by the defendant.  However, the court has now received more evidence of the market rates in the form of the declaration filed by the defense counsel regarding the hours and fees charged to their client in the course of this litigation.  This information was originally sought by the plaintiff for a different purpose – to demonstrate that his requested hours were reasonable – but the court believes that the recitation of the hourly rates for each of the defendant's attorneys would qualify as "competent, trustworthy evidence of the market" alluded to in *Case*.  Of particular interest to this court are the rates charged by defendant's lead counsel, Ms. Terry Mann, who billed between $160 to $200 per hour during the pendency of this case.[36]  The court finds Ms. Mann to be an appropriate comparison to Mr. Alegria as both are experienced litigators intimately familiar with Title VII cases.

With plaintiff's affidavits on one side and Ms. Mann's declaration on the other, the court clearly has trustworthy evidence of market rates attorneys charge to represent clients in civil rights litigation in Topeka before the United States District Court.

---

*Continental Ill. Sec. Litig.*), 962 F.2d 566, 572 (7th Cir. 1992).

[35] *Case*, 157 F.3d at 1256.

[36] $160 per hour between August 2001 and April 2002; $170 per hour between April 2002 and April 2003; $190 per hour between April 2003 and April 2004; and $200 per hour since April 2004.  *See* Declaration of Terry Mann, p. 2 (Doc. 184).

13

The bulk of Ms. Mann's time spent working on this case fell between April 2002 and April 2004. During the first of these two years, Ms. Mann's rate was $170 per hour; during the second it was $190 per hour. Therefore, from the defendant's point of view, it appears that a reasonable rate for an experienced lawyer trying a Title VII case in Topeka, Kansas during the relevant time period is the average of $170 and $190 per hour, or $180 per hour.[37] From the plaintiff's point of view, as expressed in the affidavits, such work should be compensated at $250 per hour.

Faced with two rather divergent views of what the market in Topeka, Kansas will bear, the court has the choice of either granting rates in accordance with any one of them or arriving at a compromise between them.[38] The court finds that the appropriate rate of compensation for Mr. Alegria's services is the rate charged by lead defense counsel to her client during the bulk of the work on this case. Therefore, plaintiff's counsel's fee request is reduced from $250 per hour to $180 per hour. While this rate is higher than some of the recent awards in Title VII cases,[39] the court finds it the most appropriate in light of the strict Tenth Circuit guidance in *Case* to give priority to trustworthy and

─────────────────────

[37] Notably, this rate is substantially higher than the rate of $150 per hour that the defendant invites us to use to compensate the plaintiff.

[38] *Case*, 157 F.3d at 1257 "Using either method, the court must keep in mind the controlling principle … that its job ultimately is 'to determine what the lawyer would receive if he were selling he services in the market rather than being paid by court order….'" Citing *Steinlauf*, 962 F.2d at 568.

[39] *Leidel* 322 F. Supp. 2d 1206 (Reducing request for $250/hour to $150 per hour.); *Nelson v. Kansas*, 2003 U.S. Dist. LEXIS 21719 (D. Kan. Nov. 13, 2003 (Reducing request for $175/hour to $150/hour.); *Scott v. Boeing Co.*, 2002 U.S. Dist. LEXIS 11558 (D. Kan. June 21, 2002) (Reducing request for $200/hour to $150/hour.).

competent market evidence over its own knowledge of past awards.[40]

The court, therefore denies plaintiff's motion for attorney's fees to the extent that the request of $250 per hour is hereby reduced to $180 per hour.  Because the defendant did not challenge the request of $75 per hour for plaintiff's counsel's legal assistant, all of such legal assistant's time shall be compensated at this rate.

### 4.        Downward Adjustment of Lodestar

Defendant requests a downward adjustment of the lodestar amount because the plaintiff prevailed on only one of his three claims and was awarded "less than one percent" of the amount originally sought.  Defendant urges the court to reduce the number of allowed hours by at least one third.

Plaintiff argues that a downward adjustment of the lodestar is not necessary in this case because the three claims brought in this lawsuit are interrelated and he had succeeded on one of these theories, meriting compensation for the whole.  Rather than reducing the hours, plaintiff contends that the inherent undesirability of this case warrants an enhancement.  Plaintiff states that the court has twice rejected defendant's attempts to achieve a reduction in the recoverable hours and that this renewed attempt should be rejected again because the "issue was argued, analyzed and ruled upon by the Court."[41]

---

[40] "Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rates." *Case*, 157 F.3d at 1257, citing *Lucero v. City of Trinidad*, 815 F.2d 1384 (10th Cir. 1987). See also *Godinet v. Management and Training Corp.*, 182 F. Supp. 2d 1108, 1114 (D. Kan. 2002) ("With the court's analysis controlled by the admitted evidence, the persuasiveness of both past opinions and the court's own knowledge of the Topeka legal market is greatly reduced.").

[41] Plaintiff's Reply, p. 13 (Doc. 172).

Plaintiff's statement is incorrect and disingenuous as the court has, in the past, specifically deferred ruling on the issue of hours reduction.[42]  Plaintiff would be well served to carefully review the court's decisions before reciting them back to the court in support of his own position.

"After determining reasonable hours expended on the Title VII litigation and the reasonableness of the billing rates, the court may 'adjust the lodestar calculation by other factors ... but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation.'"[43]

"The lodestar is the presumptively reasonable fee."[44]  However, the court, in fashioning the ultimate award, may consider the factors identified in *Johnson v. Georgia Highway Express, Inc.*[45] The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill necessary to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in

---

[42] In the last order addressing this issue, the court stated "[a]lthough the court finds that the plaintiff, as a prevailing party , is entitled to an award of reasonable attorney's fees and costs, *the court declines to assign a sum certain at this time.*" Memorandum and Order Granting in Part and Denying in Part Defendant's Motions for Judgment as a Matter of Law and Denying Defendant's Motion for New Trial, p. 28 (Doc. 143) (emphasis added).

[43] *Barvick v. Cisneros*, 1997 U.S. Dist. LEXIS 10904, *33 (D. Kan. July 18, 1997), quoting *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).

[44] *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994) (citations omitted).

[45] *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714, 717-19 (5th Cir. 1974).

similar cases.[46]

Some of the factors outlined in *Johnson* need no independent evaluation as they are subsumed

in the calculation of the lodestar amount itself.[47]  "The most critical factor is the degree of success

obtained."[48]

> In evaluating whether the lodestar amount should be adjusted when the prevailing party
> obtained only partial success, the court must consider two questions: (1) whether the claims on
> which the plaintiff did not prevail were related to those on which she did prevail; and (2)
> whether the plaintiff achieved a level of success that makes the hours reasonably expended a
> satisfactory basis for making a fee award.[49]

Explaining how an adjustment of the lodestar may not be necessary in cases involving multiple

claims, the Supreme Court in *Hensley* offered the following guidance:

> Many civil rights cases will present only a single claim.  In other cases the plaintiff's
> claim for relief will involve a common core of facts or will be based on related legal
> theories.  Much of counsel's time will be devoted generally to the litigation as a whole,
> making it difficult to divide the hours expended on a claim-by-claim basis.  Such a
> lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should
> focus on the significance of the overall relief obtained by the plaintiff in relation to the

---

[46] *Johnson*, 488 F.2d at 717-19.

[47] *Nephew v. Aurora*, 830 F.2d 1547, 1549 (10th Cir. 1987) ("The lodestar incorporates many of the *Johnson* factors and is considered the reasonable fee required by section 1988.  Once determined, however, the figure can be adjusted upward or downward, according to certain factors, one of the most important of which is the results obtained.") (internal quotations omitted).  *See also Campbell v. Kansas State Univ.*, 804 F. Supp. 1393, 1396 (D. Kan. 1992) ("The novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent reasons for increasing the fee award.").

[48] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

[49] *Metz,* 39 F.3d at 1493.

hours reasonably expended on the litigation.[50]

This lawsuit included related legal theories based on a common core of facts, which theories cannot be viewed as presenting a series of discrete causes of action. As such, compensation should not be awarded on a claim-by-claim basis. Instead, the court will concentrate on the significance of the overall relief. While defendant is correct in pointing out that the relief the plaintiff ultimately obtained was a fraction of what he sought, it is worth noting that the claim on which the plaintiff prevailed was the most difficult of the three. Reverse gender discrimination lawsuits seeking to vindicate the rights of white male plaintiffs are not common. Plaintiff's counsel should be commended for providing representation in a case that many attorneys may have been reluctant to approach.[51]

Throughout this case, plaintiff argued that he suffered because of his gender, both at the hands of his alleged harasser, Ms. Julie Farley, and at the hands of the defendant who disregarded his complaints but followed through on the complaints of a woman (Ms. Farley). Plaintiff's claim of retaliation was related specifically to his complaints about his treatment as a man. As such, all three claims were interrelated, making truncated compensation inequitable and contrary to the controlling precedent. Despite the fact that the plaintiff did not prevail on his claims of sexual harassment and retaliation, evidence presented in support of these claims were also relevant to the claim of reverse gender discrimination – the claim on which he did prevail. Because this claim was the most difficult of

---

[50] *Hensley*, 461 U.S. at 435.

[51] While a reverse gender discrimination cases are unusual, the court nonetheless does not feel that an enhancement is warranted. Plaintiff's counsel has not demonstrated that he or his practice has suffered as a result of his representation of the plaintiff. *See Johnson*, 488 F. 2d at 719 (Stating that the court may consider the economic impact of accepting an undesirable case in determining the reasonableness of the fee award.).

the three, it is also logical to conclude that a large portion of plaintiff's time was devoted to it.  In fact, the court notes that the reverse gender discrimination claim played a prominent role at trial and in the post-trial motions.

Having considered all the relevant factors, including the 12 *Johnson* factors, the court finds that a downward adjustment in the lodestar proposed by the defendant is not necessary.   Furthermore, to the extent that time was devoted to the ultimately unsuccessful claims of sexual harassment and retaliation, plaintiff certified that he has already eliminated "all time readily identifiable as devoted to the retaliation or sexual harassment portion of the case…."[52]   Because the court already found that plaintiff's overall hours request is reasonable, defendant's request to reduce the number of hours used in calculating the lodestar by at least one third is denied.

**5.     Calculation of Attorney's Fee Award**

Having analyzed both the hours and the rate requested by the plaintiff in his motion for attorney's fees, the court concludes that the defendant must compensate the plaintiff as follows:

a.      Mr. Alegria's work: (646.2 hours) x ($180/hour) = $116,316.00

b.      Mr. Alegria's travel: (12 hours) x ($90/hour) = $1,080.00

c.      Mr. Alegria's legal assistant's work: (70 hours) x ($75/hour) = $5,250.00

The sum total of these fees yields an attorney's fee award of $122,646.00, exclusive of costs and expenses, which will be addressed below.

---

[52] Plaintiff's Memorandum Brief, p. 4 (Doc. 162).

**B.**     **Costs and Expenses**

Defendant objects to plaintiff's request for costs and expenses on the grounds that it is untimely, not in a proper form, and includes items that are not properly taxable as costs.  Defendant also contends that the plaintiff has failed to file a timely motion for award of expenses, electing instead to seek reimbursement as costs.[53]  Should the court construe plaintiff's motion as a motion for expenses as well as costs, defendant argues that it should be denied pending submission of additional information that will enable the court to determine whether the charges are "reasonable."[54]

Fed. R. Civ. P. 54(d)(1) provides that costs other than attorneys' fees shall be allowed to the prevailing party unless the court directs otherwise.  28 U.S.C. § 1920 sets forth the costs that may be taxed under this rule.  They are "(1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under [28 U.S.C.] section 1923 ...; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C.] section 1828...."[55]  Where Section 1920 does not specifically authorize an expense, the court may "sparingly exercise its discretion in allowing such

---

[53] Defendant's Response to Plaintiff's Motion for Attorney's Fees and Costs, p. 5, n.1 (Doc. 165).

[54] *Id.*

[55] 28 U.S.C. § 1920.

costs."[56]

In addition to costs, the court may, in its discretion, award reasonable expenses to the prevailing party. "Items that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount.... Some expenses are included in the concept of attorney's fees, as incidental and necessary expenses."[57]

### 1.      Timeliness of Plaintiff's Request

Defendant argues that plaintiff's request for costs should not be considered by the court because it does not comply with D. Kan. Rule 54.1, which provides:

> The party entitled to recover costs shall file a bill of costs on a form provided by the clerk within 30 days (a) after the expiration of time allowed for appeal of a final judgment or decree, or (b) after receipt by the clerk of an order terminating the action on appeal. The clerk's action may be reviewed by the court if a motion to retax the costs is filed within five days after taxation by the clerk. The failure of a prevailing party to timely file a bill of costs shall constitute a waiver of any claim for costs.

Defendant contends that because an appeal in this case is currently pending before the Tenth Circuit Court of Appeals, plaintiff's request for costs is premature. Furthermore, defendant states that the request for costs should be denied because plaintiff did not utilize the form for Bills of Costs available on the court's website. Finally, defendant objects to the court's treatment of plaintiff's request for costs as a motion for expenses because plaintiff "has not filed a timely motion for award of expenses, and has instead specifically denominated the items he is seeking as costs."[58]

---

[56] *Ortega v. City of Kansas City, Kan.*, 659 F. Supp. 1201, 1218 (D. Kan. 1987), citing *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235 (1964).

[57] *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983) (overruled on other grounds).

[58] Defendant's Response, p. 5, footnote 1.

21

Defendant's objections are overruled.  Plaintiff filed his motion for attorney's fees and costs within the time frame prescribed by this court's order dated March 31, 2004.[59]  As the plaintiff points out in his reply, the court, in addition to the clerk, has the power to tax costs pursuant to 28 U.S.C. § 1920.  Furthermore, the court has the discretion to award reasonable expenses for items that are normally itemized and billed to the client.  Numerous decisions address the question of the recovery of a prevailing party's costs and expenses in the orders that discuss awards of attorney's fees.[60]  Defendant's objections on the basis of form are, to say the least, surprising.  The court will elevate the substance of plaintiff's request above its form and address all the items for which the plaintiff seeks compensation.[61]

### 2.   Itemized Expenses

#### a.   Postage

Defendant objects to plaintiff's request for reimbursement of postage expenses.  "Federal courts in Kansas deny taxation of postage costs based upon a lack of statutory authority in § 1920."[62]

---

[59] On March 31, 2003, plaintiff was ordered to file his motion for attorney's fees and costs within 30 days of the date of that order.  *See*  Memorandum and Order Granting in Part and Denying in Part Defendant's Motions for Judgment as a Matter of Law and Denying Defendant's Motion for New Trial, p. 28 (Doc. 143).

[60] *Case*, 157 F. 3d 1243 (Discussing attorney's fees, reasonable expenses and costs.); *Godinet*, 182 F. Supp. 2d 1108 (Discussing attorney's fees and Westlaw computer-assisted legal research expenses on a Motion for an Award of Costs and Attorneys' Fees.); *Baker* 263 F. Supp. 2d 1161 (Discussing attorney's fees, reasonable costs and expenses.).

[61] The court will consider defendant's contention that it does not have sufficient information to determine whether a particular expense is reasonable on the case-by-case basis.

[62] *Ortega v. IBP, Inc.*, 883 F. Supp 558, 562 (D. Kan. 1995), citing *City of Kansas*, 659 F. Supp. at 1219.

However, in *Nelson v. State of Kansas*, the court found that "long distance phone calls, on-line research charges, copying/facsimile costs, postage/delivery charges are items that are normally itemized and billed in addition to the [attorney's] hourly rate."[63]  Therefore, defendant's objections to postage charges are overruled and the plaintiff shall be permitted to recover such itemized expenses.

### b.      Telefacsimile Transmissions

Defendant urges the court to deny plaintiff recovery for telefacsimile transmissions on the basis that such cost is not recoverable under 28 U.S.C. § 1920.  Alternatively, defendant argues that plaintiff failed to demonstrate why faxing was necessary when email is generally preferable or to specify the per page charge used in computing the total cost.  In his Reply, plaintiff states that the charge per page is $1.00 for all faxes, with an additional $2.00 connect charge for long distances transmissions.  Plaintiff does not address defendant's contention that faxing was not necessary in this case.

Facsimile costs are normally billed to the attorney's clients and as such compensable in addition to the attorney's fees as expenses.[64]  The charge of $1.00 per page was held reasonable by this court in 1995 in *Ortega v. IBP, Inc.*[65]  The court finds that a one-time connection charge of $2.00 for long distances faxes is also reasonable.  Therefore, defendant's objections to facsimile expenses are overruled.[66]

---

[63] 2003 U.S. Dist LEXIS 21719, at *10 (D. Kan. Nov. 13, 2003) (internal quotations omitted).

[64] *Nelson*, 2003 U.S. Dist LEXIS 21719, at *10.

[65] 883 F. Supp. at 562 ($1.00 per page is a "reasonable and common charge for faxing.").

[66] Plaintiff shall be permitted to recover all such expenses with the exception of $.01 incurred on June 13, 2003, as the addition of one cent, while insignificant in terms of monetary value, is inconsistent with the plaintiff's assertion that faxing is billed in whole dollar increments.

### c.    Photocopies

Defendant claims that costs of in-house photocopying should not be taxed.  As a general rule, costs of copies may be taxed by the court if the applicant establishes that such copies were necessarily obtained for use in the case.[67]  Relying on this court's decision in *Ortega*, defendant argues that plaintiff's request for copying expenses is incomplete as it only indicates the date and the total amount charged, and should be denied pending submission of additional information.  In *Ortega*, the court found that a "general explanation of the nature of the documents copied and their necessity to the litigation" were required before photocopying charges would be awarded.[68]  In his Reply, plaintiff simply stated that in-house photocopies were charged at $.10 per page.[69]

The court has reviewed plaintiff's counsel's affidavit in support of his motion for attorney's fees and costs and found that $153.20 was charged for photocopying during the pendency of this lawsuit.  At the rate of $.10 per page, this would translate into 1,532 pages.  Despite having been given ample opportunity to do so, plaintiff has failed to provide to the court any explanation as to why so many photocopies were necessary for this litigation.  Therefore, the court grants defendant's objections and denies all of plaintiff's photocopying costs.  $153.20 will be subtracted from plaintiff's award of costs and expenses.

### d.    Deposition Transcripts

Defendant objects to the October 21, 2002 deposition transcript charge in the amount of

---

[67] *City of Kansas City*, 659 F. Supp. at 1218.

[68] *Ortega*, 883 F. Supp. at 562.

[69] Plaintiff's Reply, p. 20 (Doc. 172).

$3,105.53 because plaintiff had not specifically identified the deponent and, consequently, defendant cannot determine whether the deposition was reasonably necessary for the case.  In his Reply, plaintiff states that the charge was for the depositions of Penny Billington, Julie Farley, Michelle Forrest and Paul Pullen.

28 U.S.C. § 1920 permits recovery of deposition costs "necessarily obtained for use in the case."[70]  "Courts have interpreted the statue, which allows 'fees for the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case,' to allow taxing of the costs of taking and transcribing depositions."[71]  Included therein are the costs of copies of depositions reasonably necessary for trial.[72]

The court is satisfied that all the depositions identified by the plaintiff in his Reply were reasonably necessary for trial.  Of the four deponents, all were named as potential witnesses and three were actually called to testify.  Therefore, plaintiff shall recover the full $3,105.50 charged on the Owens Brake Powers & Associate invoice No. 2108.[73]

Defendant also objects to the charge of $15.77 for the transcript of the opening statements given during trial on the basis that plaintiff did not explain how this transcript was necessary for the preparation of the case.  Plaintiff argues that the transcript was necessary to "outline plaintiff's closing

---

[70] 28 U.S.C. §1920(2), (4).

[71] *Ortega*, 883 F. Supp. at 561, citing 28 U.S.C. § 1920(2) and *Ramos*, 713 F.2d 546.

[72] *Ortega*, 883 F. Supp. at 561, citing 28 U.S.C. § 1920(4).

[73] The original October 21, 2002 entry on Mr. Alegria's Affidavit is in the amount of $3,105.53. Because the court now has the invoice from the court reporting service, it will subtract the $.03 from plaintiff's fee request.

argument and to counter any argument by defendant that plaintiff failed to so [sic] something that he promised in his opening statement."[74]   Plaintiff further points out that defendant had also ordered the same transcript.  The court is satisfied with plaintiff's explanation and finds that $15.77 attributable to the cost of obtaining the transcript of the opening statements was reasonably necessary for the preparation of plaintiff's case.

<strong>e.    Travel Expenses</strong>

Defendant objects to plaintiff's request for reimbursement for travel-related expenses because such expenses are not among the costs taxable under 28 U.S.C. §1920. Under this court's holding in *Meredith v. Schreiner Transport, Inc.*, courts may not tax travel and lodging expenses for counsel.[75] However, in *Nelson*, the court allowed counsel to recoup travel costs because "travel was connected to [attorney's] representation of the plaintiff and adequately substantiated."[76]  Plaintiff responds to defendant's objection by simply stating that mileage is a charge that is billed to the client, which charge the court can award in its discretion.

The court agrees with the plaintiff that travel is an expense that is usually charged to the client. As such, the court has the discretion to award it to the prevailing party.  However, the plaintiff has made absolutely no attempt to substantiate any of his "travel expense" entries.  From the plaintiff's billing statement, the court cannot determine where counsel or his assistant traveled on any given day and whether such travel was related to the representation of his client.  In particular, the court is

---

[74] Plaintiff's Reply, p. 18 (Doc. 172).

[75] 814 F. Supp. 1004, 1006-07 (D. Kan. 1993).

[76] 2003 U.S. Dist. LEXIS 21719 at *10.

troubled by the two examples brought to its attention by the defendant – namely the travel charges billed for the day the verdict was returned on June 23, 2003 and travel charges billed for September 17, 2003, three months after the trial had concluded.  Because the presence of these two entries throws into substantial question the propriety of all the other travel charges, the court finds that all of plaintiff's travel charges will be disallowed.

Defendant's objections to plaintiff's travel expenses are sustained.  Because plaintiff failed to adequately substantiate any of his requests for reimbursement for travel expenses, all such expenses shall be disallowed.  Furthermore, the court declines to order defendant to reimburse plaintiff's counsel for a parking violation incurred on September 19, 2002 in Manhattan, Kansas.[77]  The court will subtract $344.53 from plaintiff's request for expenses.

### f.    Telephone Expenses

Defendant urges the court to deny plaintiff reimbursement for both ordinary telephone charges and charges for Cingular Wireless.  In *City of Kansas City*, the court found that long distance telephone calls are not included in expenses authorized under §1920.[78]  However, such charges are "items that are normally itemized and billed in addition to the [attorney's] hourly rate,"[79] and can be awarded to the prevailing party as expenses.

The court declines to sustain defendant's objection.  Ordinary and cellular telephone charges

---

[77] *Baker,* 263 F. Supp. 2d 1161 (Title VII plaintiff could not recover as costs "parking fees" incurred as a result of parking tickets received during trial or which were inadequately documented as "mints and parking.").

[78] 659 F. Supp. at 1219.

[79] *Nelson*, 2003 U.S. Dist LEXIS 21719, at *10 (internal quotations omitted).

are charges that are customarily billed to clients; furthermore, charging 50 cents for each wireless

minute is reasonable and would explain the even dollar amounts noted for Cingular Wireless calls.

Therefore, plaintiff shall be permitted to recover his ordinary and wireless telephone charges.[80]

### g.    Witness Fees

Defendant objects to $1,380.00 plaintiff seeks to recover for the travel and testimony by Ms.

Connie Unrein, a social worker who treated the plaintiff for his depression.[81]  Defendant argues that

plaintiff should be compensated for this expense at the rate of "$40 per day, mileage at the established

rate, and subsistence fees, if an overnight stay is necessitated."[82]  In response to plaintiff's suggestion

that, because Ms. Unrein provided expert testimony at trial she should be compensated at her regular

rate of $120 per hour, defendant states that Ms. Unrein was never designated as an expert witness and

that plaintiff should not be allowed to recover a concealed higher fee for a simple fact witness.[83]

Plaintiff counters that Ms. Unrein was rightly compensated at a higher, expert, rate because she offered

expert testimony at trial even though she had never been designated as an expert.  Such designation,

claims plaintiff, is not necessary for a party's treating physician, nor is the lack of designation dispositive

---

[80] The court will subtract $.41 incurred on May 27, 2004 because this amount, once again, does not conform with the plaintiff's counsel's representation that all Cingular Wireless calls are billed in $.5 increments.

[81] According to the invoice from the Cowley County Mental Health Center submitted by the plaintiff in support of his fee application, Ms. Unrein sought compensation for 11.5 hours of travel, court testimony and review of the records at the rate of $120 per hour. *See* Exhibit B to Plaintiff's Reply (Doc. 172).

[82] Defendant's Response to Plaintiff's Motion for Attorney's Fees and Costs, p. 10, *citing* 28 U.S.C. § 1821.

[83] Defendant's Surreply, p. 5 (doc. 175).

on the issue of compensation. Rather, it is the substance of the testimony that controls the amount of fee paid to a witness.

On May 28, 2003, plaintiff filed his Final Witness and Exhibit List, designating Ms. Unrein as a "Social Worker" and noting that she was "expected to testify about plaintiff's psychological counseling and mental health records."[84]   At trial, Ms. Unrein indeed testified regarding her treatment of the plaintiff, the history of his emotional problems, her diagnosis and prognosis.   While most of Ms. Unrein's testimony centered on her treatment of the plaintiff, including the descriptions of his state of mind, she did speak to the causes of his affliction and the prognosis for recovery.   Ms. Unrein was the only witness who offered any professional medical opinion regarding plaintiff psychiatric health.   She was also the only healthcare provider the plaintiff put forth in his case.

The question before the court is at what rate should the defendant compensate the plaintiff for the testimony of a treating provider who was not designated specifically as an expert and for whom no expert report was filed.   The answer depends on whether Ms. Unrein should be considered a "fact" or an "expert" witness.

Compensation of fact witnesses is governed by 28 U.S.C. § 1821, which provides:

> A witness shall be paid an attendance fee of $40 per day for each day's attendance.   A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.[85]

Compensation of expert witnesses is governed by the Federal Rules of Civil Procedure.   Under

---

[84] Plaintiff's Final Witness and Exhibit List, p. 3 (Doc. 96).

[85] 28 U.S.C. § 1821(b).

the Rules, a party may depose any person who has been identified as an expert witness whose opinions may be presented at trial.[86]  Such expert witness shall, "unless manifest injustice would result," be compensated by the party seeking discovery at a "reasonable fee for time spent in responding to discovery."[87]

Fed. Rule Civ. P. 26(a)(2) clearly contemplates the general category of persons who give expert testimony - namely testimony regarding "evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence" - and a subcategory of witnesses who are "retained or specially employed to provide expert testimony in the case" and for whom an expert report is required.[88]  Treating physicians fall into the first, broader category of experts who are not required to provide a written report.[89] "Whether a report must be prepared is not the *sine qua non* of whether a witness is an expert.  Rather it is the substance of the testimony that controls whether it is considered expert or lay testimony."[90] Similarly, this court concludes that whether a treating physician should be compensated at a "fact" witness rate of $40 per day or a "reasonable" rate depends on the substance of such physician's testimony.

Defendant's position that any witness who was not designated as an "expert" witness prior to

---

[86] Fed. R. Civ. P. 26(b)(4)(A).

[87] Fed. R. Civ. P. 26(b)(4)(C).

[88] *Lamere v. New York State Office for the Aging, et. al.*, 2004 U.S. Dist. LEXIS 13217, at *3-4 (N.D.N.Y. July 14, 2004), citing Fed. R. Civ. P. 26(a)(2)(A) and (B).

[89] *See* Advisory Committee Notes to 1993 amendments ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.").

[90] *Lamere*, 2004 U.S. Dist. LEXIS at *5 (internal citations omitted).

trial is entitled only to the statutory compensation set forth in 28 U.S.C. § 1821 is overly simplistic and fails to account for the split that exists with respect to this question among various district courts. To be certain, a number of courts have held that a treating physician testifying solely to his or her treatment of the patient is not entitled to anything above the fact witness fee.[91]   However, a more common view is that a treating physician responding to discovery requests and testifying at trial is entitled to his or her "reasonable fee" because such physician's testimony will necessarily involve scientific knowledge and observations that do not inform the testimony of a simple "fact" or "occurrence" witness.[92]   This is also the position adopted by the only decision the court has found in the District of Kansas. In *Harvey v. Shultz*, Magistrate Judge Humphreys concluded that "treating physicians should ordinarily be allowed a

---

[91] *Demar v. USA*, 199 F.R.D. 617, 619-20 (N.D.IL 2001) (Treating physicians' compensation is set by § 1821 at the rate of $40 per day because Congress, not courts, should determine whether one profession should be compensated higher for testimony.), *Zanowic v. Ashcroft*, 2002 U.S. Dist. LEXIS 7772 (S.D.N.Y. April 17, 2002) (Treating physician entitled only to $40 per day for his testimony.), *Fisher v. Ford Motor Company*, 178 F.R.D. 195,198 (N.D. Ohio 1998) (Treating physicians are fact witnesses and are not entitled to charge a fee above the statutory minimum for their testimony.).

[92] *Lamere*, 2004 U.S. Dist. LEXIS at *6-7 ("If the treating physician's testimony is limited to pure observation, an explanation of treatment notes, etc., then the physician may properly be characterized as a fact witness and receive nothing more than the statutory witness fee. If, however, testimony is elicited that reasonably may be considered to be an opinion based on specialized skill and knowledge that fall withing Fed. R. Evid. 702, then the physician may properly be characterized as an expert witness and is entitled to a reasonable fee...."), *Mock v. Johnson*, 218 F.R.D. 680, 683 (D. HI 2003) (Defendant must pay a reasonable fee of $135 per hour for deposition of plaintiff's psychologist.), *Hoover v. USA*, 2002 U.S. Dist. LEXIS 15648, *16-17 (ND IL August 21, 2002) (Treating physician who may be called to testify must be paid a reasonable fee for his deposition.), *Grant, et. al. v. Otis Elevator Co.*, 1999 F.R.D. 673, 676 ("Treating physicians who testify under Fed. R. Evid. 702 as to their diagnoses, treatment and prognoses are experts within the meaning of [Fed. R. Civ. P.] 26(b)(4)(C) and are entitled to a reasonable fee."), *Haslett v. Texas Industries, Inc.*, 1999 U.S. Dist. LEXIS 9358 (ND TX May 20, 1999) (Treating physician entitled to a reasonable fee.), *Coleman v. Dydula*, 190 F.R.D. 320 (W.D.N.Y. 1999) (Treating physicians entitled to reasonable fee for deposition testimony pursuant to Fed. R. Civ. P. 26(b)(4)(C).).

reasonable fee beyond the $40 statutory limit."[93]  In so holding, the court found that higher rate was "commensurate with [physicians'] professional standing and special expertise" and was justified by the need to remunerate such witnesses for the time they were unable to deliver medical care.[94]

Having reviewed in detail a number of decisions that address the question of a treating physician's compensation, the court adopts the view articulated by Judge Humphreys in *Harvey*.  With the exception of a situation where a physician is called upon to testify solely as to his or her recollection of an event such as a car accident observed from a distance, in which case the physician would be a pure "fact" witness, a physician testifying as to the diagnosis, treatment and prognosis of a patient will necessarily draw upon special scientific knowledge and experience.  Such testimony falls squarely within the purview of Fed. R. Evid. 702 because the physician is offering "scientific, technical or other specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue." As such, regardless of his designation, the physician is entitled to a "reasonable fee" for the testimony.

In this case, Ms. Unrein testified regarding plaintiff's medical condition, her diagnosis of his problems, his treatment and prognosis.  This testimony differs markedly from a situation where a witness who happens to be a healthcare provider is called to testify about the color of a traffic light or the position of a car involved in an auto accident observed by such witness.  Ms. Unrein, an experienced social worker, had clearly relied on her specialized knowledge in the field of psychology to describe plaintiff's mental state.  Her testimony in her capacity as a specialist in the field of mental health

---

[93] 2000 U.S. Dist. LEXIS 19815, *7 (D. Kan. November 16, 2000).

[94] *Id*.

undoubtedly aided the jury in understanding the evidence presented.  Therefore, Ms. Unrein is entitled
to compensation for her trial testimony at a reasonable rate above the statutory rate of $40 per day.
And because expert fees are customarily billed directly to the client, such expert fees, to the extent they
are "reasonable," are recoverable by the plaintiff as the prevailing party in this lawsuit "within the
meaning of 'attorney's fee.'"[95]

      Once the court has determined that plaintiff is entitled to recover "reasonable fees" for Ms.
Unrein's appearance, it must consider whether $120 per hour is, indeed, reasonable.  The court finds
that it is.

      The plaintiff argues that the defendant should compensate him for the cost of retaining Ms.
Unrein at the rate charged by Ms. Unrein to the plaintiff.  Defendant, who argued in its Response to
plaintiff's motion that Ms. Unrein should be awarded only the statutory $40 per day fee, does not
dispute the reasonableness of her hourly rate.  The court finds that $120 per hour is not an
unreasonably high rate for a licensed social worker and plaintiff's treating provider testifying in her
expert, professional capacity.  This rate is comparable to the rates other courts have awarded to
treating physicians and other medical experts.[96]  Therefore, the court overrules defendant's objections
to plaintiff's request for costs associated with Ms. Unrein's testimony.  Plaintiff shall recover the full
$1,380.00 incurred in retaining Ms. Unrein's services for the trial.

---

     [95] *Baker*, 263 F. Supp. 2d at 1206.

     [96] *Mock*, 218 F.R.D. at 683 (Awarding $135 per hour to treating psychologist.); *Lamere*, 223
F.R.D. at 93 (Awarding $185 per hour to treating physician.); *but see Haslett*, 1999 U.S. Dist. LEXIS
9358, *6 (Finding that $10,000 per day, $650 per weekend day, and $1,000 per week day to not be
reasonable.).

### h.    PACER Costs

Defendant objects to plaintiff's request for reimbursement of his PACER expenses because

such costs are not taxable under 28 U.S.C. §1920.  Courts have historically allowed reimbursement for

computer-assisted research as a cost that is customarily charged by an attorney to his client.  In

*Invessys, Inc. v. McGraw-Hill Cos., Ltd.*, the First Circuit rejected the notion that such research

should be included in the law firm's overhead and disallowed by the courts: "computer-assisted

research should be ... reimbursed under attorney's fee statutes ... so long as the research cost is in fact

paid by the firm to a third-party provider and is customarily charged by the firm to its clients as a

separate disbursement."[97]  Reimbursement for computer assisted on-line research has similarly been

permitted in this district.[98]  PACER costs, which are a relatively new tool, are treated by courts as the

type of "computer-assisted research" which should be included in taxable expenses.[99]

Because the court finds that PACER system is a valid computer assisted on-line research tool,

charges associated with its use are recoverable as ordinary expenses by the prevailing party.

Defendant's objections with respect to the PACER expenses are overruled.[100]

---

[97] 369 F. 3d 16, 22 (1st Cir. 2004).

[98] *Nelson*, 2003 U.S. Dist. LEXIS 21719 at *10.

[99] *Johnson v. Spencer Press of Me., Inc.,* 2004 U.S. Dist. LEXIS 16560, *25-29 (D. Maine August 19, 2004)  (Finding that PACER costs constitute "computer-assisted" research and should not be considered "firm overhead."). *See also Gilliam v. Sonoma County*, 2004 U.S. Dist. LEXIS 4069, *17 (N.D. CA January 22, 2004) (Awarding PACER services fees.).

[100] The court points out that defendant's objection to the charge incurred on November 12, 2003 is without merit.  Contrary to defendant's suggestion, a large pleading, namely Defendant's Reply to plaintiff's Response to Motion for Judgement as a Matter of Law and for a New Trial (Doc. 142), was filed less than two weeks before the charge was incurred.  Therefore, it is not unreasonable to assume that the

### i.        Certified Mail

Defendant objects to plaintiff's attempt to charge $8.84 for certified mail on October 2, 2002 because no recipient was identified and nothing in the docket sheet suggests that plaintiff served anything via certified mail around that time.  Plaintiff responds by stating that this charge is related to the service of subpoenas to Jim Branson and Julie Farley.  The court finds this charge to be reasonable and overrules defendant's objections.

### 3.        Computation of the Total Costs and Expenses Award

Having analyzed plaintiff's request for costs and expenses and defendant's objections thereto, the court hereby enters the following award:

| | |
|---|---|
| Plaintiff's original request | $7,419.47 |
| Disallowed expenses: | |
| Telefacsimile | (.01) |
| Photocopying | (153.20) |
| Deposition transcript | (.03) |
| Travel | (344.53) |
| Cingular Wireless | (.41) |
| | |
| Total award for costs and expenses | $6,921.29[101] |

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Award of Attorney's Fees and Costs Pursuant to Fed. R. Civ. P. 54(d)(1) and (2) is granted in part and denied in part.  Plaintiff's request for attorney's fees is reduced to $122,646.00 and his request for costs and expenses is

---

plaintiff was, in fact, accessing this document or any document associated with the briefing of the Motion for Judgment as a Matter of Law and Motion for a New Trial.

[101] Plaintiff's counsel's lack of attention to detail led to the court's disallowance of certain claimed expenses and caused the court to spend far more time than ordinarily necessary to evaluate a request for an award of expenses.

reduced to $6,921.29.  Plaintiff shall recover from the defendant attorney's fees and costs in the total

amount of $129,567.29.

Dated this 8th day of February, 2005, at Topeka, Kansas.


_____s/K. Gary Sebelius_____
K. Gary Sebelius
U.S. Magistrate Judge

36